CLERK U.S. BANKRUPTCY COURT
DISTRICT OF OREGON

DEC 3 0 2004

LODGED_____ REC'D_____
PAID_____ DOCKETED___

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | Bankruptcy Case No. 04-66814-fra13 |
| LARRY and GAYLE COOKUS, | |
| Debtors. | MEMORANDUM OPINION |

## BACKGROUND

Debtors filed their petition for relief under chapter 7 of the Code on August 1, 2002 (Case #02-65749-aer7). Creditor Premier West Bank filed a proof of claim for $271,453 and, on March 24, 2003, filed an adversary proceeding (03-6131-aer) alleging that its claim was excepted from discharge in Chapter 7, 11 U.S.C. § 523(a)(2),(4). Premier's claim is based on a judgment obtained in Douglas County Circuit Court in the amount of $303,339.92, with post-judgment interest at 11% per annum. The claim was described in in Debtors' Schedule F by date and amount only, with a notation that the claim was disputed. An order was entered granting a general discharge of debts on March 27, 2003, effective 21 days thereafter (Doc #40). The discharge order excluded any claim subject to a pending proceeding objecting to discharge. On September 3, 2004,

PAGE 1 - MEMORANDUM OPINION

the Chapter 7 trustee filed his final report and an order was entered on October 27 directing distribution of dividends to creditors.

On August 26, 2004, Debtors filed a Chapter 13 bankruptcy petition. Premier filed a proof of claim in the Chapter 13 case in the amount of $320,744 (Claim #4).[1] Both the Chapter 7 case and the Chapter 13 case remain open. The adversary proceeding was abated pending confirmation of a plan in the Chapter 13 case.

Premier filed an objection to confirmation of the Chapter 13 plan of reorganization on the grounds, among others, that its undischarged judgment debt and other, relatively minimal, unsecured debt puts Debtors over the Chapter 13 threshold for unsecured debts of $307,675 found in § 109(e). A confirmation hearing was held on November 30, 2004, and the matter was taken under advisement.

ISSUES

1. Should interest on Premier's judgment calculated from the date of the Chapter 7 petition to the date of the filing of the Chapter 13 petition be included in the calculation of liquidated, noncontingent unsecured debts for purposes of Code § 109(e)?

2. Should the total of unsecured debts for purposes of Code § 109(e) be reduced by the $39,000 payment made by the Chapter 7 trustee to Premier after the filing date of the Chapter 13 case?

// // //

---

[1]The Proof of Claim in the Chapter 13 case purports to be based on promissory notes previously reduced to judgment, as disclosed by the proof of claim in the Chapter 7 case. The parties agree that the judgment disclosed in the earlier claim liquidated the amount owed under the notes.

PAGE 2 - MEMORANDUM OPINION

DISCUSSION

A. Chapter 13 Threshold Test

Code § 109(e) provides in pertinent part: "Only an individual with regular income that owes on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675. . .may be a debtor under chapter 13 of this title." A debt is defined as liability on a claim, Code § 101(12), and a claim is a right to payment. Code § 101(5)(A).

B. Timing of Calculation - Code § 109(e)

The Court of Appeals for the Ninth Circuit, in In re Scovis, 249 F.3d 975, 982 (9th Cir. 2001, stated that "the rule for determining Chapter 13 eligibility under § 109(e) to be that eligibility should *normally* be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith." (Emphasis added.) In a footnote to the opinion, the court writes that

> (t)he dissent takes issue with our failure to include in the calculation accrued interest on the judgment, stating that we "undermine() *Slack* (187 F.3d 1070 (9th Cir. 1999)) by failing to explain why readily ascertainable interest should be excluded from the eligibility calculation." Whether accrued interest not listed in the originally filed schedules is readily ascertainable is an open question, and one we need not address since it will not affect Debtor's Chapter 13 ineligibility.

Id. at 984, n.1.

Scovis does not provide any standard for measuring good faith when a court looks at a schedule. Courts have, however, interpreted

PAGE 3 - MEMORANDUM OPINION

good faith in relation to filing a Chapter 13 petition or plan. Courts have held that neither malice nor fraud is required to find a lack of good faith. In re Powers, 135 B.R. 980, 994, (Bankr. C.D. Cal. 1991)(citing to In re Wadron, 785 F.2d 936 (11th Cir. 1986), and other cases). "'Good faith' in a chapter 13 proceeding must be identified and defined on a case-by-case basis." Powers at 992 (citing In reRimgale, 669 F.2d 426, 431 (7th Cir. 1982)).

The Scovis panel notes that its approach to determining § 109 eligibility is similar in nature to the consideration of monetary limits for subject matter jurisdiction for purposes of diversity jurisdiction under 28 U.S.C. § 1332. Scovis, 249 F.3d at 482, citing to Matter of Pearson, 773 F.2d 751 (6th Cir. 1985. As a rule, District Courts, when considering whether applicable jurisdictional limits have been satisfied, look only to pleadings filed in good faith. However, good faith in this context does not involve the pleader's honesty or intention; instead, the "good faith" requirement means that a claim (or, as here, a scheduled debt) will not be taken at face value if it appears from other relevant facts that the jurisdictional amount cannot, "to a legal certainty", be satisfied. Horton v. Liberty Mutual Ins., 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed.2d 890, 4 Fed. R. Serv. 179 (1961). *See also* Davenport v. Mutual Benefit Health & Accudent Assoc., 325 F.2d 785 (9th Cir. 1963) (affirmed judgment dismissing case after proof demonstrated that jurisdictional limit could not be met).

For purposes of determining whether a particular schedule was filed in good faith in making the calculation under Code § 109(e),

the debtor's schedules do not dictate the outcome if it appears from other relevant facts, readily ascertained, that the amount of a scheduled claim, is, as a matter of law, greater than the amount disclosed. This is especially so where, as here, the schedules are irregular or incomplete. Schedule F of Official Bankruptcy Form 6 detailing Creditors Holding Unsecured Nonpriority Claims, requires that for each claim listed, the debtor disclose the date the claim was incurred, the consideration for the claim, and the amount of the claim. The Schedule F filed in this shows Premier West Bank as creditor with a claim in the amount of $229,355. It provided a date of "12/00," but provided no information regarding the nature of the debt, such as the consideration for the claim and the rate at which interest accrues.[2] Under the circumstances, the Court may consider other, readily ascertainable information to determine the amount of the debt for jurisdictional purposes.

C. Accrued Interest

"Most courts find that interest continues to accrue on all pre-petition debt even if such interest cannot be charged against the estate. This is important in instances where a debt becomes

// // //

---

[2] It is not unusual for bankruptcy schedules to show only the name of the creditor and the amount of the claim. While the schedules could be rejected and the debtor forced to refile corrected ones, in practice they are generally accepted as filed. When the Court is limited to looking only to the originally filed schedules in making the threshold determination under Code § 109(e) as Scovis suggests, however, it is necessary that the schedules conform in all material respects to the requirements. This is not as onerous as its sounds: when the accuracy and/or detail of schedules becomes an issue debtors may always filed amended schedules to supply critical information.

PAGE 5 - MEMORANDUM OPINION

nondischargeable." Collier on Bankruptcy, ¶ 502.03(3)(b)(iii) (15th Ed.).

In In re Dow Corning Corp., 270 B.R. 393 (Bankr. E.D. Mich. 2001), the court was presented with the issue of whether post-petition interest accruing on a pre-petition tax obligation is deductible by the debtor. Part of the question thus required a determination of whether the interest continued to accrue.

The court stated that the bankruptcy estate and the debtor are separate and distinct entities and that the objective of the claims-allowance procedure is to identify those claims which are enforceable against the bankruptcy estate. Disallowance of post-petition interest under § 502(b)(2)(providing that no claim against the estate for unmatured shall be allowed), however, does not preclude the creditor from asserting a right to collect post-petition interest from the debtor. While it may be true that, as against the estate, interest stops accruing on the petition date, post-petition interest can continue to accrue against the debtor. The court opined that but for debtor's discharge, even a disallowed claim (such as for post-petition interest) will continue to be valid and enforceable against the debtor.

The Dow Corning opinion based, as least in part, its holding that post-petition interest continues to accrue against the debtor on Bruning v. U.S., 376 U.S. 358 (1964). Bruning held that post-petition interest on an undischarged tax debt remained a personal liability of the debtor. In applying the Bruning principle, the 9th Circuit BAP held that § 502(b)(2) "does not proscribe recovery from

PAGE 6 - MEMORANDUM OPINION

the debtor personally" of post-petition interest on a nondischargeable student loan debt. In re Pardee, 218 B.R. 916, 921-22 (BAP 9th Cir. 1998).

In Kitrosser v. CIT Group/Factoring, Inc. (In re Kitrosser), 177 B.R. 458 (Bankr. S.D. N.Y. 1995), the court held that post-petition interest on certain pre-petition debts continued to accrue against the debtor during the Chapter 11 bankruptcy and continued as a debt of the debtor (as opposed to the estate), and upon dismissal and in the absence of discharge of the debt, creditor could assert a claim against the debtor for the principal amount of the debt and all post-petition interest.

In Allen v. Romero (In re Romero), 535 F.2d 618 (10th Cir. 1976), the Bankruptcy Court entered a money judgment against the debtor and a judgment finding the debt nondischargeable as based on fraud. The court, in applying Bruning, held that post-petition interest on the nondischargeable judgment continued to apply as against the debtor, even though interest on the debt stopped at the petition date for purposes of liquidating the estate. While the case was brought under the Bankruptcy Act, it still remains relevant and a valid expression of the law, given the adoption of Bruning in the Ninth and other circuits.

When the Debtors filed their Chapter 13 petition, the amount of the claim against the Chapter 13 estate included the undischarged claim from the Chapter 7 estate. In addition, interest on the Premier judgment continued to accrue against the Debtors after the Debtors filed under Chapter 7.

PAGE 7 - MEMORANDUM OPINION

Accrued interest, when omitted from debtor's schedules, should be included in the calculation of total debt for purposes of § 109(e) when the amount is readily determinable. This is the same standard applied to determine whether a debt is liquidated. See In re Ho, 274 B.R. 867, 873 (BAP 9th Cir. 2002)(citing, among others, In re Slack, 187 F.3d 1070, 1073 (9th Cir. 1999)). "Whether a debt is subject to 'ready determination' depends on whether the amount is easily calculable or whether an extensive hearing is needed to determine the amount of debt." Id. (citing Slack at 1074).

Had Schedule F included a description of the Premier debt as required, it would have been clear that accrued interest was a component of debt at the Chapter 13 petition date. The amount of the accrued interest would be 'readily determinable' without resort to an extensive hearing. See Ho at 875 (citing In re Wenberg, 94 B.R. 631, 634 (BAP 9th Cir. 1988), aff'd 902 F.2d 768 (9th Cir. 1990)). Indeed, as it happens, the interest on Premier's claim may be calculated by simply referring to the judgment itself, and giving credit for pre-petition payments. All this information was submitted at the hearing on confirmation.

I therefore hold that the claim in the Chapter 13 case also includes accrued interest on the judgment at 11% from the Chapter 7 petition date to the date of the Chapter 13 filing.[3]

---

[3] Debtors argue that the 11% interest rate imposed as part of the judgment by the State Court is incorrect, and should have been 6.5%. The Bankruptcy Court does not, however, have the power to correct or otherwise modify a State Court judgment. The Rooker-Feldman doctrine provides that the U.S. Supreme Court is the only federal court that may review an issue previously determined or
(continued...)

PAGE 8 - MEMORANDUM OPINION

D. Distribution by Chapter 7 Trustee

Calculation of debts owed for eligibility purposes should be made as of the petition date, without regard to post-petition events. Scovis, 249 F.3d at 982. See also In re Ho, 274 B.R. at 873, (citing In re Slack, 187 F.3d at 1073). Because distribution by the Chapter 7 trustee did not occur until after the Chapter 13 petition date, the debt owed to Premier cannot be adjusted downward to reflect the payment on its debt for purposes of Code § 109(e).

CONCLUSION

During the pendency of the Chapter 7 case, interest on the Premier judgment continued to accrue against the Debtors, but not against the Chapter 7 estate. Since the underlying debt was not discharged in the Chapter 7 case, the Debtors remained liable on the date the Chapter 13 petition was filed for both the judgment debt and the interest accrued to the Chapter 13 petition date. The debt is not contingent as it is, at best, subject to only a condition subsequent (i.e. a determination in the adversary proceeding that the debt may be discharged). The amount owed as of the date of the petition, after accounting for prepetition payments, was $262,376.81, plus interest thereon from August 1, 2002 (the date of the last payment) to August 26, 2004, the date of the petition for relief, or $59,699.71, for a total of $322,076.52. Thus the

// // //

---

[3](...continued)
"inextricably intertwined" with the previous action in State Court between the same parties. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983).

PAGE 9 - MEMORANDUM OPINION

judgment by itself puts the Debtors over the jurisdictional limit; it follows that the case must be dismissed.

In light of the foregoing, it is not necessary to discuss the creditor's claim that the plan was not filed in good faith.

This opinion constitutes the Court's findings of facts and conclusions of law. An order consistent with this opinion will be entered.

FRANK R. ALLEY, III
Bankruptcy Judge